NEBEKER, Chief Judge:
The appellant, Lillian F. Connelly, appeals a May 13, 1993, Board of Veterans’ Appeals (Board or BVA) decision that the National Service Life Insurance (NSLI) policy of her son, Lawrence J. Connelly, the veteran, had lapsed prior to his death, and, therefore, she was not entitled to the policy’s face amount of $10,000, but only the amount actually paid, $1,100. The appellant contends in essence that VA should have made a more concerted effort sooner to inform the veteran that his policy payments were no longer being met by the dividends of his policy and that, at least when the veteran was finally contacted, VA should have informed him that his policy had lapsed and that it could be reinstated if the proper forms were filled out. The Secretary argues that the BVA’s decision should be affirmed. On January 25, 1995, this Court ordered the Secretary to explain what VA’s policy is with regard to obtaining a veteran’s new address from the Department of Motor Vehicles or other potential sources of information. After consideration of the record on appeal, the informal brief of the appellant, the Secretary’s brief, the Secretary’s response to the January 25, 1995, order, and the appellant’s informal response to the Secretary’s response to the Court’s order, we will affirm the Board’s decision for the following reasons.
I. FACTS
The veteran, Lawrence J. Connelly, served in the U.S. Army from December 1950 to December 1953. Record (R.) at 27. His NSLI policy for $10,000 became effective on December 18, 1950, with his mother and father as co-principal beneficiaries with the right of survivorship. R. at 24. In November 1976, the veteran elected to use the dividends earned on his NSLI policy to pay his NSLI premiums in advance. R. at 29. After the veteran made this election, and once VA applied his dividends to pay the premiums as far in advance as possible, a notice was sent to the veteran reflecting this transaction. Each of these notices contained the statement, “Please tell us promptly if you change your address or beneficiary.” R. at 106. The veteran last renewed his insurance policy in December 1985. R. at 56. His premiums were covered by his dividends until the premium due October 18, 1986. R. at 32. That premium bill was sent to his last address of record, and was returned to VA by the Post Office. In December 1986, a Notice of Past Due Payment was sent to the last known address, and was similarly re *86 turned with the Post Office’s notation, “Return to Sender[;] No Forwarding Order on File[;] Unable to Forward.” R. at 38-39. Another notice was sent to the same address that month informing the veteran that the dividend which had become available on December 17, 1986, had been used to pay his premium until September 1987. R. at 41. That notice was also returned with the Post Office’s notation “Attempted Not Known.” R. at 42.
When the veteran did not pay the premium due in September 1987, a Notice of Lapse and an Application for Reinstatement were sent to the veteran’s last known address. R. at 44-45. This notice was also returned to VA by the Post Office. Another dividend became payable on December 17, 1987, but was not applied to the veteran’s overdue premium payments since, according to VA, it was too late to be accepted for payment of premiums past due without a reinstatement application from the veteran.
In March 1989, VA contacted the Massachusetts Registry of Motor Vehicles to get the veteran’s new address so that the refundable credit on his lapsed NSLI policy could be returned to him. R. at 47. After the Registry of Motor Vehicles gave VA the veteran’s new address, VA sent him a Notice of Refundable Credit and asked the veteran to verify that this new address was indeed his, and the veteran promptly did. R. at 52. Thereafter, VA refunded $179.49 to the veteran. R. at 50. According to the veteran’s brother, Edward Connelly, in a statement submitted on behalf of his mother, the appellant, the veteran was diagnosed with lung cancer in June 1989. R. at 237. The veteran died on February 16, 1990. R. at 61. The death certificate lists three causes of death, with hepatic decompensation being the immediate cause with a 14-day interval between onset and death listed on the death certificate. Ibid. The two conditions listed as leading to the immediate cause of death were metastatic carcinoma, with the notation “months” as the interval between onset and death, and carcinoma of the lung, with one year listed as the interval between onset and death. Ibid. No autopsy was performed. Ibid.
In March 1990, the veteran’s brother called the VA Insurance Center to ask why no insurance proceeds had been paid to his mother who is, presumably, the sole surviving beneficiary. R. at 68; see R. at 94. The Insurance Center informed Mr. Connelly that there was no way to reinstate the veteran’s NSLI policy. R. at 73-77. In determining whether there was a possibility of an administrative adjustment, the Insurance Center seems to have assumed that the reason that the veteran had not asked to have his life insurance reinstated when he received his dividend check in May 1989 was that he knew he had cancer and not that VA had failed to inform him that his policy had lapsed but could still be reinstated with the appropriate proof of health. R. at 77 (“May 1989 — [the veteran] received money. He knew he had a premium option so why didn’t he question this? Prob[ably] because he was suffering from cancer at this point.”).
Mr. Connelly’s claim on behalf of the appellant for the proceeds of the NSLI policy was denied in January 1991. R. at 144, 146-47. Mr. Connelly appealed this decision on behalf of the appellant to the Board. R. at 235^49. The Board, addressing the issue of whether the face value of the NSLI policy was in effect at the veteran’s death, concluded that the veteran’s policy had not been in effect, having lapsed two and one-half years before his death, and denied the appellant’s claim.
II. ANALYSIS
The Secretary argues that it was the veteran’s duty to keep VA informed as to his address and any failure to inform the veteran of the lapse of his NSLI policy and reinstatement procedures is harmless since he could not have met the reinstatement requirement of being in good health. In Hyson v. Brown, 5 Vet.App. 262, 265 (1993), we stated,
In the normal course of events, it is the burden of the veteran to keep the VA apprised of his whereabouts. If he does not do so, there is no burden on the part of the VA to turn up heaven and earth to find him. It is only where a file discloses other possible and plausible addresses that an attempt should be made to locate him at *87 the alternate known address before finding abandonment of a previously adjudicated benefit
According to the Secretary’s response to this Court’s January 25, 1995, order, during the period of time in question, VA policy and procedure left it up to the individual VA employee whether to contact potential sources of information regarding a veteran’s new address, and VA did not do this until nearly two years after the veteran’s policy had lapsed. However, when VA finally did contact the veteran, VA failed to give him the information VA knew he had not previously received because that information had been returned to VA by the Post Office as undeliverable. In its decision, the BVA tacitly admitted this failure was error. R. at 10 (“Unfortunately, while the veteran was sent a dividend in 1989, the VA did not inform the veteran at the same time that his policy had lapsed for nonpayment of premiums.”). The question before us, then, is whether this error was harmless. See 38 U.S.C. § 7261(b) (“Court shall take due account of the rule of prejudicial error.”).
According to 38 C.F.R. § 8.23 (1994),
National Service life insurance on any plan may be reinstated if application and tender of premiums are made:
(a) Within 6 premium months including the premium month for which the unpaid premium was due, provided the applicant be in as good health on the date of application and tender of premiums as he or she was on the last day of the grace period of the premium in default and furnishes satisfactory evidence thereof.
(b) After expiration of the 6-month period mentioned in paragraph (a) of this section, provided applicant is in good health (§ 8.1) on the date of application and tender of premiums and furnishes satisfactory evidence.
The regulations define “good health” in connection with insurance to “mean that the applicant is, from clinical or other evidence, free from disease, injury, abnormality, infirmity, or residual of disease or injury to a degree that would tend to weaken or impair the normal functions of the mind or to shorten life.” 38 C.F.R. § 8.1(a) (1994).
While VA did not reach the veteran until his insurance had lapsed for nearly two years, and therefore, under § 8.23 the veteran could not have simply signed a statement saying he was still in good health, VA’s position is that this oversight on its part was harmless error since the veteran’s death certificate indicated that the veteran had suffered from lung cancer for one year prior to death, i.e., that the veteran had lung cancer at the time VA finally contacted him. As the VA regional office noted in its assessment of possible administrative adjustment,
Why didn’t we mail [reinstatement] requirements when we found the insured? At the point of diseovery[,] his contract had been in a state of lapse for [approximately] 2 y[ea]rs. He was suffering from cancer and would not have been able to meet the med[ical] requirement] for good health [reinstatement]. Did our failure to send [reinstatement] requirement] change the ins[ured’s] position for the worse? No.
R. at 77. The veteran’s brother, on the other hand, essentially challenges the death certificate’s determination as to when the veteran’s lung cancer began, stating that the veteran was not diagnosed with lung cancer until June 1989, the month after VA contacted him, and he had all the appearance of good health until then. See Appellant’s Brief at 7. While the brother is in effect challenging the determination appearing in the death certificate as to when the lung cancer began, without medical evidence to support his view, his lay testimony must fail. Cf. Espiritu v. Derwinski, 2 Vet.App. 492, 494 (1992); Grottveit v. Brown, 5 Vet.App. 91, 93 (1993). Confined as we are to the record, it is apparent that at the time the veteran was contacted by VA, he could not have furnished satisfactory evidence that he was in good health as required by the regulations at sections 8.23(b) and 8.1(a). Thus, any error is harmless.
III. CONCLUSION
Accordingly, the Board’s decision is AFFIRMED.